## Commonwealth v. Kauffman et al.

*Highways—Township—Supervisors—Reasonable repair.*

1. Township supervisors are required to keep the highways in repair and free from all obstructions, but this means reasonable repair under all the circumstances.

2. Where the supervisors scraped a dirt road during the spring or summer and dragged it at least three times during the year, in addition to putting as much stone on it as their finances permitted, and the road is free from obstructions and sink-holes, the road is being kept in reasonable repair and the supervisors are not chargeable with neglect as a result of ruts occurring in the road during wet weather and winter months.

Appeal from conviction before justice of the peace. Q. S. Montgomery Co., Feb. T., 1927, No. 51.

*Robert Trucksess,* for plaintiff; *Thomas Hallman,* for defendants.

KNIGHT, P. J., April 29, 1927.—On March 4, 1927, Grace M. Miller, a resident of Skippack Township, Montgomery County, made information before Ralph McLaughlin, a justice of the peace of said county, against B. L. Kauffman, Henry H. Kratz and Henry Gargus, supervisors of Skippack Township, charging them with failure to perform their duty to repair a certain road in said township leading from the Mennonite Church to the Dunkard Church, in violation of section 236 of the General Township Act of July 14, 1917, P. L. 840.

On this information, a warrant was issued and the defendants given a hearing before the justice on March 8, 1927. On the fifteenth day of the same month, the justice adjudged the defendants guilty of failure to repair the said road, and sentenced them to pay a fine of fifty dollars and the costs of prosecution. The defendants having obtained an allowance, appealed to this court, where the matter was heard *de novo.*

Section 236 of the Township Code, *supra,* provides that the township superintendent or roadmaster, under the direction of the board of supervisors, shall, *inter alia,* "have the general care and superintendence of the improvement of the highways and bridges of the township" and shall "cause such highways and bridges to be kept in repair and free from all obstructions."

The evidence produced before us warrants the following

### Findings of fact.

1. Ten families live on the road complained of, which is about two miles long. It is an ordinary dirt road, running through clay soil.

2. In summer, the road is in fair condition, except when it rains, at which time it becomes slippery and automobiles are apt to skid into the ditch. In winter, the mud and ruts become deep, especially in wet weather, and it is at times impassable for automobiles and hard to negotiate with horse-drawn vehicles.

3. The supervisors scraped the road in the spring or summer of 1926 and dragged it at least three times during the year from March of 1926 to March of 1927. They ordered a resident living along the road to drag the road whenever necessary. They placed stone on a portion of the road in 1925 and on another portion in 1926, and have already ordered stone which they intend to put on further portions of the road in 1927.

4. Skippack Township has fifty-two miles of road; twenty-five miles of dirt road, 8.7 miles of hard-surfaced road and the rest consists of roads that have been stoned to some extent. The tax rate for road purposes is ten mills, which brings in about $10,000. The supervisors have a floating indebtedness of $4500, but the township has no bonded indebtedness for road purposes.

5. In the fall and winter of 1926-1927, there has been an unusual amount of rain, which began early in the fall and continued late in the winter.

### *Discussion.*

The burden of the complaint of the prosecutrix and her witnesses seems to be that the defendants have failed in their duties as supervisors because they have not built a stone road from the Mennonite Church to the Dunkard Church. They complain of no particular obstruction to travel; they name no specific sink-holes, but say the whole road, at certain times of the year, is bad and that the ordinary repair to dirt roads will not suffice to keep it in condition. The situation, in their opinion, requires a stone road. On the other hand, the evidence of the defendants is to the effect that this road has received the same care and attention as the other dirt roads of the township, from which it differs in no respect. True, the law requires that supervisors keep the highways in repair and free from all obstructions, but this means reasonable repair under all circumstances, taking into consideration the character of the road, the nature of the soil, the amount of travel to which it is subjected, the number of miles of road under the care of the supervisors, and the funds at their command. The weather conditions, also, are a factor where dirt roads are concerned. Before the days of automobiles, the technique of the road supervisors in the care of dirt roads was rather simple. Every spring and summer the roads were scraped and rounded up, the gutters were cleaned out, stones were put in the worst mud-holes, and the road was repaired. With the advent of the motor-car, an entirely different situation presented itself. The self-propelled vehicle depends for its efficiency upon traction, and this requires a hard surface. Old Dobbin could draw the buggy or market-wagon through mud in which an automobile will skid and stick. The taxpayer who cannot use his car by reason of the condition of the roads or who gets stuck in the mud when he does try to use it naturally complains in no uncertain voice, and with the automobile in universal use, with many miles of dirt road to maintain and very limited funds to maintain them, the problems of the supervisors in many of our townships have become acute. To build a road such as some of the witnesses say is necessary would cost $10,000, or the entire income of the township for road purposes for one year, leaving nothing for the other roads.

This the law does not require the defendants to do, but they are required to use reasonable care and diligence in keeping the roads under their supervision in repair.

After careful review of all the testimony and reading the brief submitted by counsel for the prosecution, in the light of all the circumstances, we are not satisfied that the defendants have been guilty of neglect of their duties as supervisors.

We do not want to be understood as countenancing sloth or wilful neglect of duty upon the part of road officials, for we find no evidence of either in this case. Neither do we favor the promiscuous prosecution of road supervisors. If the law is made to bear too hard upon them and they are constantly harassed by threats of arrest, it is going to become increasingly difficult to get competent and self-respecting citizens to occupy the office, especially when the remuneration is as small as at present. Nearly all the witnesses in this case were the drivers or users of automobiles, and the condition of this road, like many of our township roads, is far from satisfactory to the citizen who uses an automobile. But the difficulty is due to the change in the manner of travel far more than to neglect of duty on the part of the supervisors. Some stones should be placed upon this road, and, in reaching our conclusion in this case,

we were moved in no small degree by the uncontradicted evidence that the same supervisors had ordered stone in the summer of 1926 and were only prevented from placing it upon the road by the unusual early rains in the fall. We are, therefore, of the opinion that the defendants should be discharged, and there remains nothing to consider but the imposition of costs. We feel, in this case, that the costs should be paid by the County of Montgomery: Meredith et al. v. Bradford County Commissioners, 26 Dist. R. 151.

And now, April 29, 1927, the defendants are found and adjudged not guilty, and the costs are placed upon the County of Montgomery.

From Aaron S. Swartz, Jr., Norristown, Pa.